

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

March 30, 2020

**BY ECF & EMAIL**

The Honorable Nelson S. Román
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

    Re:    *United States* v. *Richard Emanuel*, 20 Cr. 48 (NSR)

Dear Judge Román:

    The Government respectfully submits this letter in response to defendant Richard Emanuel's March 26, 2020, motion for release on bail. Dkt. No. 10. The defendant's sole request is for temporary release under 18 U.S.C. § 3142(i). That is unavailable here as a matter of law since this is the defendant's first application for bail. In any case, the defendant is both a risk of flight and a danger to the community for the reasons set forth below. The defendant's motion should therefore be denied.

    **I.**    **Background**

    The defendant is charged in a three-count indictment ("Indictment") for a robbery spree he committed in December 2019 with his co-defendant. Count One charges him for conspiring with his co-defendant to commit Hobbs Act Robberies and Counts Two and Three each charge substantive Hobbs Act Robberies for two robberies he committed: one of a gas station in Peekskill on December 7 and one of a gas station in Fishkill on December 18. Surveillance footage, physical evidence, and cell phone evidence all strongly suggest that the two defendants committed at least two more robberies, both on December 8, in Peekskill and East Fishkill. Finally, surveillance footage and cell phone evidence also tie the defendants to three other gas station robberies in Danbury, Connecticut—one on November 17, 2019, one on November 25, 2019, and another on December 17, 2019. All told, the Government is in possession of evidence that links the defendant and his co-defendant to seven different robberies in the span of a month. Cf. *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000) (the Government may proceed "by proffer alone" in bail hearings (internal quotation marks omitted)).

    On December 18, 2019, the defendants were arrested shortly after committing a gas station robbery in Fishkill. They were charged by complaint and presented before the Honorable Lisa Margaret Smith that day. The defendant consented to detention and has not made a bail

application until now. On January 21, 2020, a Grand Jury sitting the Southern District of New York returned the Indictment.

The defendant now seeks temporary, pretrial release on the grounds that (i) while detained at the Westchester County Jail (the "WCJ") he may be at risk of contracting COVID-19; (ii) his Sixth Amendment right to counsel is constrained due to measures in place at the WCJ to limit the spread of COVID-19; and (iii) he has medical conditions that put him at greater risk to COVID-19 than other detainees.

## II.    The Legal Framework

The sole statutory ground for release that the defendant invokes is 18 U.S.C. § 3142(i). As noted above, this is the defendant's first bail application. And thus, "no detention order issued under [18 U.S.C. § 3142(e)]" exists. 18 U.S.C. § 3142(i). This is critical because the relief the defendant seeks under Section 3142(i) can only be granted by "subsequent order." See id. ("The judicial officer may, by *subsequent order*, permit the temporary release of the person . . . to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." (emphasis added)). In short, the defendant's sole request for relief is unavailable as a matter of law on this initial bail application.

Even putting that aside, the defendant poses a risk of flight and is a danger to the community. The Court must order detention if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

When considering a bail application, the Court examines four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g).

The Court may order detention based on risk of flight or danger to the community. In other words, the Court "does not need to find both bases are proven in order to order a defendant's detention." United States v. Epstein, No. 19 CR. 490, 2019 WL 3229190, at *4 (S.D.N.Y. July 18, 2019). And each ground is governed by a different standard as well. The Government must show "by clear and convincing evidence that the defendant presents a danger to the community and by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight." United States v. English, 629 F.3d 311, 319 (2d Cir. 2011) (internal quotation marks omitted). Put differently, to detain on risk of flight grounds it must simply be shown that such risk is "more likely than not." United States v. Brennerman, 705 F. App'x 13, 16 (2d Cir. 2017) (Summary Order) (internal quotation marks omitted). '

Finally, "bail hearings are typically informal affairs, not substitutes for trial or discovery" and so "courts often base detention decisions on hearsay evidence." United States v. Abuhamra, 389 F.3d 309, 321 n.7 (2d Cir. 2004) (internal quotation marks omitted).

### III.     The Defendant Is A Danger to the Community and a Risk of Flight

This is not the defendant's first time committing armed robberies. In 2012, at 26 years old, he was convicted of attempted armed robbery in the Bronx, and he has another a prior attempted armed robbery conviction from Bedford, New York in 2009.[1] The current Indictment stands in a line of armed robberies the defendant has committed. Further, as noted above, the Government has adduced evidence linking the defendant (and his co-defendant) to five more robberies, in addition to the two robberies for which the defendant has been indicted, which were committed in November and December 2019. Bail, given this demonstrated and repeated history, puts the public at significant risk.

Even narrowing the lens from the defendant's lengthy history to the "nature and circumstances" of the charged offenses amply demonstrates the public safety risk. 18 U.S.C. § 3142(g). In the robberies charged in Counts Two and Three, the defendant displays a knife and threatens force. Troublingly, surveillance footage from the Peekskill robbery on December 7 shows the defendant jamming a knife into a clerk's chest after the clerk initially refuses to open cash registers for the defendants. In other words, this is strong evidence that the defendant was prepared to carry out his threat of force—threats that he repeatedly issued over the course of the charged conspiracy.

The nature of these robberies is without a doubt troubling. Such robberies would be even more troubling today, in current circumstances. Right now, gas stations are vital to keeping supply chains moving in the midst of the COVID-19 outbreak. Attacking, disrupting, and robbing vital links in interstate commerce will have even broader consequences now on fragile supply chains and the essential services gas stations provide. Cf. Governor Cuomo Issues Guidance on Essential Services Under the "New York State on PAUSE" Executive Order, https://www.governor.ny.gov/news/governor-cuomo-issues-guidance-essential-services-under-new-york-state-pause-executive-order, Office of The Governor, (March 20, 2020, 4:45 P.M.) (designating gas stations to be essential services).

The bail package does nothing to mitigate the danger posed by the defendant. At the time of the robberies charged in the Indictment, the defendant was living at the address he now proposes living at if bailed. As the Court is well aware, "[h]ome detention and electronic monitoring" largely operate on the "word" of the defendant that he or she will be compliant. United States v. Millan, 4 F.3d 1038, 1049 (2d Cir. 1993) (internal quotation marks omitted). What the defendant has shown through his repeated and violent actions—the current Indictment having been preceded by two prior convictions for armed robberies—inspires no confidence that his "word" will be any good. Instead, the defendant's actions compels the conclusion that he will continue to commit armed robberies, which is particularly worrisome and dangerous in the given moment.

Finally, and briefly, the defendant poses a risk of flight given his sentencing exposure. Because of his prior convictions, the defendant is a Career Offender under the U.S. Sentencing

---

[1] The defendant also has an outstanding state Assault charge pending in Dobbs Ferry Village Court.

Guidelines.  Thus, if he is convicted of the charges in the Indictment, he faces 210-262 months' imprisonment—a sentence far, far greater than anything the defendant has previously served.

### IV.     The Defendant's COVID-19 Arguments Should Be Rejected

In the main, the defendant argues that current conditions at the WCJ put him at a greater risk of COVID-19 and also compromise his ability to consult with counsel.  To start, given that Section 3142(i) of the Bail Reform Act does not apply on this initial application, it is uncertain how the Court should factor these arguments in.

Regardless, under any standard, they should be rejected.  The Government's discussions with officials at the WCJ suggest that the jail has taken timely, appropriate steps to handle COVID-19.  At the moment, only two inmates, in the entire facility, have tested positive.  Importantly, the WCJ has represented that it has drastically cut back on the number of new inmates it has accepted and further represented that any new inmates are quarantined from the rest of the inmate population for two weeks. In addition, the WCJ has suspended certain activities which require interaction among inmates and taken heightened measures to clean and sanitize parts of the jail.  Despite all this, the WCJ still has kept in place procedures for attorney visits (in a no-contact setting), phone calls, and secure videoconferencing.  Simply put, there is nothing outside of speculation at this point to suggest the WCJ is unprepared to handle COVID-19 while maintaining attorney access for inmates.

Finally, the defendant proffers that a major surgery in 2014 puts him at heightened risk of COVID-19.  Without a doubt, the surgery appears to have been serious.  But, the defendant has not produced any evidence of any ongoing health issues stemming from that surgery.  The closest he comes to doing so is by stating that he sometimes suffers from "shortness of breath."  Dkt. No. 10 at 3.  Again, the defendant offers no evidence that he is receiving ongoing treatment for anything, let alone respiratory problems, at the WCJ or even prior to his incarceration.  And the defendant himself reported himself to be in "excellent physical health with no medical problems" to Pre-Trial Services when he was arrested in December 2019.  While the surgery six years ago appear to have been serious, the fact that the defendant has no ongoing condition he is being treated for calls into question—at the very least—any unique risk COVID-19 poses to him.

      The defendant has asked for temporary release without clear legal means for the Court to grant it. And, in any case, he poses danger to the community and a risk of flight. Thus, the defendant's initial motion for bail should be denied.

                    Respectfully submitted,

                    GEOFFREY S. BERMAN
                    United States Attorney

by: _____
                    Shiva H. Logarajah
                    Assistant United States Attorney
                    (914) 993-1918

Cc: Daniel Parker, Esq. (by ECF and email)